**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**EDWARD BURTON,**<br><br>***Defendant.*** | **Case No.: 1:22-cr-00296-JRR** |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Edward Burton's Motion for Compassionate Release pursuant to 18 U.S.C § 3582(c)(1)(A).[1] (ECF No. 40; the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rules 105.6, 207 (D. Md. 2025). For the reasons that follow, the Motion will be denied.

## I. BACKGROUND

Mr. Burton is an inmate serving a 156-month term of imprisonment. (ECF No. 17.) Mr. Burton is currently housed at FCI Milan, and has served approximately 45 months of his sentence. (ECF No. 17.) His projected release date is January 12, 2032.[2]

---

[1] Also pending before the court is Mr. Burton's request that this court reconsider its denial of Petitioner's motion to vacate his sentence pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 50; the "Motion to Reconsider.") "The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a final judgment may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Jackson v. Sprint/United Mgmt. Co.*, 633 F. Supp. 3d 741, 745 (D. Md. 2022) (citing cases). A Rule 59(e) motion "is an extraordinary remedy that should be applied sparingly." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir. 1997)). While Mr. Burton frames his request as one to correct a manifest error of law, his argument merely disagrees with this court's decision and relitigates matters this court has already decided. "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (quoting *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). A motion under Rule 59(e) is similarly "not authorized to enable a party to complete presenting his case after the court has ruled against him." *Bank v. M/V "Mothership"*, 427 F. Supp. 3d 655, 659 (D. Md. 2019) (quoting *Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996)). Indeed, "mere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993) (citation omitted). The court has reviewed its decision; it does not find any clear error of law or manifest injustice. The Motion to Reconsider will therefore also be denied.

[2] Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited October 9, 2026); *see United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (noting that courts "routinely take judicial notice of information contained on state and federal government websites").

On December 15, 2021, the Drug Enforcement Administration ("DEA") executed search warrants targeting the Burton Drug Trafficking Organization ("Burton DTO"), which Burton operated along with Jermaine Steward, Jamar Middleton, and Jerrell Simms. (ECF No. 14, Attach. A.) That day, agents found Burton and other Burton DTO members at a "stash house" with large amounts of fentanyl, firearms, and ammunition. *Id.* Agents recovered approximately 431.25 grams of fentanyl, 14 firearms (including three high-powered rifles), more than $14,000 in cash, jewelry valued at more than $400,000, and a Mercedez Benz registered to Burton. *Id.* DEA agents discovered two firearms and nearly half a million dollars in jewelry in Burton's primary residence and three additional firearms, ammunition, and a Mercedes registered to Burton in his storage unit. *Id.*

On September 21, 2022, Mr. Burton was charged via Superseding Information with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C § 841(a) (Count One); and Possession of a Firearm and Ammunition by a Prohibited Person, in violation of 18 U.S.C § 922(g) (Count Two). (ECF No. 7.) Burton waived his right to an indictment, *see* ECF No. 12, and on October 12, 2022, entered a plea of guilty on both counts. (ECF No. 14.) Pursuant to the Rule 11(c)(1)(C) plea agreement, the parties agreed to a total term of imprisonment of 156 months (156 months as to Count 1 and 120 months as to Count 2, to run concurrently). *Id.* At Mr. Burton's sentencing that same day, the court calculated an offense level of 31 and a criminal history category of III, corresponding to a Guidelines range of 135 to 168 months. (ECF No. 18; ECF No. 20 at p. 35–36.) The court imposed a sentence of 156 months in accordance with the parties' agreement. (ECF No. 17.)

Two of Mr. Burton's co-defendants, Jermaine Steward and Jamar Middleton, were later convicted of the same offenses. Mr. Steward, with a criminal history category of III and total offense level of 31, was sentenced to a term of imprisonment of 108 months, *see* 23-cr-81, ECF Nos. 10, 18, and Mr. Middleton, with a criminal history category of IV and a total offense level

of 31, was sentenced to a term of imprisonment of 138 months, *see* 23-cr-82, ECF Nos. 19, 32.[3] Mr. Steward and Mr. Middleton, like Mr. Burton, were sentenced in accordance with the agreed-upon sentence in their Rule 11(c)(1)(C) plea agreements.

On January 5, 2024, Mr. Burton filed the instant Motion requesting the court reduce his sentence of 156 months to a term of nine years on the basis of unwarranted sentencing disparities. (ECF No. 40.)

## II. LEGAL STANDARD

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "However, Congress created an exception to that general rule when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Section 3582(c), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court … upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

18 U.S.C. § 3582(c)(1)(A).

[3] Co-defendant Jerell Simms was also convicted of Possession with Intent to Distribute Fentanyl, but was not convicted of a firearms offense. (22-cr-355, ECF No. 25.) Mr. Simms was sentenced to a term of imprisonment of 97 months pursuant to a Rule 11(c)(1)(C) plea agreement. *Id.*

Therefore, when considering a motion for compassionate release, the court "must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023) (citing 18 U.S.C. § 3582). "Only after this analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release."[4] *Id.*

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has explained:

> [T]he threshold requirement in § 3582(c)(1)(A) is non-jurisdictional and satisfied if a defendant requests the Bureau of Prisons to bring a motion on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court.

*United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (emphasis in original).

As this requirement "is not jurisdictional, it may be waived or forfeited." *Id.* at 130

[4] As the Fourth Circuit has recently summarized:

> The 3553(a) factors include: 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence imposed; 3) the kinds of sentences available; 4) the kinds of sentences and sentencing ranges for the offense; 5) policy statements by the Sentencing Commission; 6) the need to avoid unwarranted sentencing disparities amongst similarly situated individuals; and, 7) the need to provide restitution to victims of the offense.

*United States v. Wable*, 181 F.4th 441, 446 (4th Cir. 2026). "A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor." *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021).

(citing *United States v. May*, 855 F.3d 271, 275 (4th Cir. 2017)). In the instant case, the Government explicitly "waive[d] any argument that Burton's motion should be denied for failing to meet the exhaustion requirement." (ECF No. 62 at p.8 n.1.) Therefore, the court considers this element satisfied even in the presence of facts suggesting Mr. Burton may technically fail to meet the requirement.[5]

**B. <u>Extraordinary and Compelling Reasons</u>**

In general, "the district court enjoys broad discretion in conducting § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). Nonetheless, "[e]xtraordinary and compelling reasons," while not defined by Congress, is a "demanding standard," and the "criteria are not empty vessels." *Fernandez v. United States*, 608 U.S. 411 (2026). As discussed above, a reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173 (citing 18 U.S.C. § 3582). Relevant here, the policy statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). The Policy Statement sets forth six circumstances that may establish "extraordinary and compelling reasons" for compassionate release:

(1) medical circumstances of the defendant
(2) a defendant who is at least 65 years old and suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
(3) family circumstances of the defendant;
(4) the defendant being a victim of abuse while in custody;
(5) other reasons of similar gravity as (1)–(4); and
(6) unusually long sentence if a defendant has served at least ten years and a change in law creates a sentencing disparity[6]

---

[5] In his original Motion, Mr. Burton represented that he had satisfied this requirement as his initial request "was denied more than 30 days ago," and referenced "Exhibit A," however, no such Exhibit was attached to his Motion. (ECF No. 40 at p. 4 n.1.) By supplement docketed on October 15, 2024, Burton offered an attachment evidencing that an administrative request to the warden was submitted no later than August 26, 2024, and was denied on September 19, 2024, indicating a 30-day period between submission of his administrative request and the supplement, but not necessarily his original Motion. (ECF No. 57-1 at p. 1–2.)

[6] The Supreme Court has recently held that a sentencing disparity caused by a nonretroactive change in law "is neither an 'extraordinary' nor a 'compelling' reason that warrants a reduction in sentence." *Rutherford v. United*

U.S.S.G. § 1B1.13(b)(1)–(6).

***1. Co-defendant Sentencing Disparities***

Mr. Burton asserts that the disparity between his sentence and the sentences of his co-defendants present "extraordinary and compelling" circumstances that justify a sentence reduction under 18 U.S.C. § 3582(c)(1)(a). (ECF No. 40 at p. 2.) Burton contends he is similarly situated to his co-defendants, and that the disparity as between his sentence and their sentences was wrongly based on Burton's supposed leadership role despite the fact that "[a]t no time did the Government even remotely suggest" that any defendant "less culpable" than any other. (ECF No. 65 at p. 6.)

Because the Policy Statement is "applicable in all compassionate release cases," *United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025), courts have analyzed co-defendant sentencing disparities under the "other reasons" or "catch-all" provision of U.S.S.G. § 1B1.13(b)(5). *See United States v. Locust*, 771 F. Supp. 3d 819, 826 (E.D. Va. 2025). Although "[a] district court is not required to consider the sentences of codefendants, and it is well settled that codefendants and even coconspirators may be sentenced differently for the same offense." *United States v. Bass*, No. 20-7561, 2023 WL 4105711, at *1 (4th Cir. June 21, 2023) (quoting *United States v. Pierce*, 409 F.3d 228, 235 (4th Cir. 2005)), "[w]here there are unwarranted disparities, this Court in particular has in certain cases reduced sentences, especially where less

*States*, 608 U.S. —, 146 S. Ct. 1320 (2026). It reasoned that a nonretroactive change in law that effects sentencing "necessarily creates a disparity between those who receive the benefit and those who do not." *Id.* at 1330. Therefore, "Congress's deliberate decision *not* to extend relief" cannot be a compelling reason to extend relief. *Id.* at 1330–31. *Rutherford* explicitly reserved the question of whether co-defendant sentencing disparities not involving a change in law may still constitute an extraordinary and compelling reason for relief. *See, e.g., id.* at 1345 n.6 (distinguishing cases involving co-defendant sentencing disparities which "do not involve nonretroactive sentencing amendments"); *id.* at 1331 (declining to "nail down the precise boundaries of the phrase" extraordinary and compelling beyond the particular dispute). Nonetheless, the Court subsequently vacated and remanded the Fourth Circuit's decision in *Johnson v. United States*, a decision affirming a district court's finding of extraordinary and compelling circumstances based on a significant sentence disparity between the defendant and his coconspirators, "for further consideration in light of" *Rutherford* and *Fernandez*. *See United States v. Johnson*, 143 F.4th 212, 216 (4th Cir. 2025), *judgment vacated*, No. 25-551, 2026 WL 1640930 (U.S. June 8, 2026). The Court has therefore arguably "indicated that such a disparity between co-conspirators may not be an 'extraordinary and compelling' reason for compassionate release." *United States v. Fonguh*, No. CR RDB-21-334, 2026 WL 1780584, at *6 (D. Md. June 18, 2026).

culpable defendants receive a more severe sentence than their more culpable co-defendants." *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1018 (D. Md. 2021).

Assuming without deciding that a sentencing disparity between or among co-defendants can constitute an extraordinary and compelling reason to warrant a reduction of sentence,[7] the court is not persuaded such circumstances exist here. Where co-defendants are "not similarly situated, a sentencing disparity" is not extraordinary and compelling, but "expected and appropriate." *Bass*, 2023 WL 4105711, at *1. To demonstrate an unwarranted disparity, therefore, "a defendant must, at the very minimum, show that a codefendant with a similar record who has been found guilty of similar conduct received a lesser sentence for that conduct." *Locust*, 771 F. Supp. 3d at 827 (emphasis omitted).

In *Eccleston*, the court found extraordinary and compelling circumstances where a "less culpable" defendant received a dramatically greater sentence compared to "more culpable co-defendant[s]." *Eccleston*, 573 F. Supp. 3d at 1017. In contrast, where a defendant acted "as an organizer or leader" in a conspiracy, and his co-defendants did not, the leader was "not similarly situated" to his co-defendants, and his greater sentence did not constitute an extraordinary or compelling circumstance for relief.[8] *United States v. Deiguez*, No. 3:13-CR-00020-FDW, 2024 WL 2808656, at *4 (W.D.N.C. May 31, 2024) (quoting *United States v. Dieguez*, 633 Fed. App'x 106, 112 (4th Cir. 2015)); *see also United States v. Gross*, No. 1:02-CR-00201-JRR-1, 2023 WL 8716878, at *13 (D. Md. Dec. 18, 2023) (discussing same), *aff'd*, No. 24-6017, 2025 WL 2753942 (4th Cir. Sept. 29, 2025).

Here, the facts stipulated to by Mr. Burton support the court's treatment of him as more

---

[7] See *supra* note 6.

[8] While some courts have considered co-defendant sentencing disparity as support for compassionate release even for a movant defendant who had a leadership role in the offense, they have done so only where the sentence was so lengthy that it outpaced what could reasonably be pursuant to the difference in circumstances of the co-defendants, and only where supplemented by other reasons. *See United States v. Whitehurst*, No. CR PJM 11-00567, 2024 WL 3455708, at *4 (D. Md. July 17, 2024) (finding that while leader of conspiracy in *Eccleston* received disparate sentence that was "certainly warranted," compassionate release was warranted where post-conviction relief resulted in his sentence being more than triple that of most co-defendants, and his sentence was more than triple the mean sentence for his offense.)

culpable. The stipulated facts pertain to the many seizures on warrants executed at Mr. Burton's primary residence and in a storage unit leased by Mr. Burton. (ECF No. 14 at pp. 13–14.) The DTO was also described as the "Burton DTO" in Burton's plea agreement. *Id.* at 12.

Indeed, the court's sentencing of Mr. Burton's co-defendants reflects the same. During the sentencing of Mr. Middleton, the court stated that "Mr. Burton as the leader received 156 months . . . and I think that helps me feel comfortable that 138 months imprisonment for [Middleton] is appropriate." *See* 23-cr-82, ECF No. 32 at p. 40:9–12. The court similarly found that Mr. Steward's sentence of 108 months was "a fair place to land" given that Burton "received 156 months, and was the leader of the drug trafficking organization."[9] *See* 23-cr-81, ECF No. 18 at p. 58:17–19. Considering that the lesser sentences of Mr. Burton's co-defendants aligned with determinations of lesser culpability in the criminal venture as compared to him, these co-defendants are not similarly situated to Mr. Burton, and the disparity between and among their sentences does not constitute an extraordinary and compelling basis for relief.

Mr. Burton emphasizes that he was "never charged with, nor convicted of drug-conspiracy or occupying a leadership or supervisory role . . . . [y]et, his sentence reflects an apparent alternative variant sentence akin to a 2-level (leadership role) increase." (ECF No. 69 at p. 8.) Mr. Burton's 156-month sentence is not variant, but rather falls comfortably within the applicable Guidelines range and even below the range he would have faced with a leadership enhancement. Had he received a leadership enhancement, his total offense level would have increased to 33, resulting in a higher Guidelines range of 168 to 210 months. U.S.S.G § 3B1.1; U.S.S.G Ch.5, Pt. A. Instead, his offense level remained at 31, corresponding to a range of 135 to 168 months. U.S.S.G Ch.5, Pt.A.

[9] The court also noted as "significant" that Steward's criminal history "is over a decade old" and that he had no history of firearms offenses, unlike Mr. Burton. *See* 23-cr-81, ECF No. 18 at p. 56:10–13.

Additionally, Mr. Burton's argument fails to account for the fact that the court sentences based on the particularized facts of the case at hand. *See Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016); *see also United States v. Hawes*, 309 F. App'x. 726, 735 (4th Cir. 2009) ("The determination of an appropriate sentence in any particular case requires an individualized assessment of the facts and circumstances presented by that particular defendant."); *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009) (noting the ability of "the sentencing court[] . . . to consider uncharged or even acquitted conduct during sentencing"). The court therefore concludes that the disparity between Burton's sentence and those of his co-defendants does not constitute an extraordinary and compelling reason for a reduction of sentence.[10]

***2. Other Sentencing Disparities***

Mr. Burton also asserts that his sentence is excessive because it is comparable in length to sentences received for more serious crimes. (ECF No. 65 at p. 7–8.) In his reply, Burton cites three cases out of this court where the defendants distributed larger quantities of drugs and received relatively similar sentences. *Id.* Burton also argues that his sentence is excessive because it is "essentially 70 percent of the amount of time imposed for murder." (ECF No. 65 at p. 8.)

Although the disparity between a defendant's sentence and the sentences imposed for ostensibly more serious convictions has occasionally factored into compassionate release

---

[10] In his Motion, Burton cites several cases concerning compassionate release and sentencing disparities; however, these cases are materially distinguishable from the present case. As the Government notes in ECF No. 62 at p. 11, *United States v. McCoy* involved a change in the law that resulted in a sentence disparity of 30 years. 981 F.3d 271, 274 (4th Cir. 2020). In the present case, there has been no change in law, and a sentencing disparity of four years is vastly different in magnitude from a 30-year disparity. Additionally, *United States v. Payton* concerned a less culpable defendant seeking a sentence reduction after a more culpable defendant's sentence was reduced, resulting in a 109-month disparity. PJM 06-341, 2021 WL 927631 at *2 (D. Md. March 10, 2021). Burton also cites *United States v. Edwards*, which involved a less culpable defendant challenging a sentence disparity with a more culpable defendant that came about, in part, due to a change in law. Criminal No. PJM 05-179, 2021 WL 1575276 at *1–2 (D. Md. April 22, 2021). As the Government correctly notes, Burton and his co-defendants were all sentenced within a 6-month period and there is no analogous change in law at issue. (ECF No. 62 at p. 10.)

analysis in the Fourth Circuit, it does not materially affect the court here. *See United States v. Moody*, 115 F.4th 304, 311 (4th Cir. 2024) (comparing a 360-month sentence imposed for manufacture and distribution of methamphetamine to the average 285-month average sentence for murder). In *Moody*, the Fourth Circuit ultimately concluded that the district court did not err in denying a defendant's motion for compassionate release, as a "sentencing disparity alone can't dictate the courts analysis." *Id.* at 312 (citing *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020), *abrogated on other grounds by Rutherford v. United States*, 608 U.S. —, 146 S. Ct. 1320 (2026)); *see also Fernandez*, 146 S. Ct. at 1303 (noting that compassionate release "highlights its focus on granting mercy rather than righting legal wrongs").

As discussed in the previous section, simply comparing the number of months imposed on different defendants does not provide a complete or accurate picture. Sentencing is inherently individualized and reflects a range of factors, including the specific charges brought, the defendant's criminal history, the applicable Guidelines range, and the court's assessment of the § 3553(a) factors. *See Molina-Martinez*, 578 U.S. at 200; *see also Hawes*, 309 F. App'x. at 735. With consideration to the particular facts of Mr. Burton's case, his extensive criminal history, the seriousness of his offense, and his relative culpability were all relevant factors eligible for consideration at sentencing. This court reached the conclusion that 156 months was an appropriate sentence that fell within the Guidelines range, and Mr. Burton agreed to this sentence pursuant to his Rule 11(c)(1)(C) plea agreement. As "the sentence imposed is within the advisory guidelines range, it is presumed to be reasonable." *United States v. Ridges*, 210 F. App'x. 240, 241 (4th Cir. 2006) (citing *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006)).

Burton draws the court's attention to *United States v. Brown* to argue that the court should consider the national average for a similar offense. (ECF No. 65 at p. 8 n.9) (citing *United States v. Brown*, 706 F. Supp. 3d 516, 522 (D. Md. 2023)). While the court recognizes

that Burton's sentence is above both the national and Fourth Circuit average sentence for fentanyl trafficking, the disparity here is not comparable to that in *Brown*.[11] The length of Mr. Burton's sentence is not "draconian and oppressive," and there is no "shocking disparity" between his sentence and the sentences of others or sentencing averages. *See United States v. Nicholas*, 2024 WL 4700649, at *11 (W.D. Va. Nov. 6, 2024) (citations omitted) (quoting *United States v. Brown*, 715 F. Supp. 3d 1034 (S.D. Ohio 2024)). Accordingly, that Burton received a sentence higher than the average, or comparable to sentences imposed for more serious offenses, does not constitute an extraordinary and compelling reason for a reduced sentence.

***3. Amendments to Guidelines***

Mr. Burton alleges that he "did not receive" the benefit of Amendment 782 of the Sentencing Guidelines, effective 2014, which reduced the base offense level of most drug quantities by two points. (ECF No. 56 at p. 3.) However, this argument fails to support his requested relief, as an argument that the court "misapplied the Sentencing Guidelines" amounts to a collateral attack of the sentence. *United States v. Bueno*, 821 F. Supp. 3d 570 (E.D. Va. 2026); *United States v. Gross*, No. 1:02-CR-00201-JRR-1, 2023 WL 8716878, at *10 (D. Md. Dec. 18, 2023) (finding that a request to "review the findings made by the original sentencing court" constitutes a collateral attack on conviction and sentence "that must be brought via § 2255"); *Fernandez*, 608 U.S. at 411 (finding that a "prisoner who collaterally attacks the validity of his conviction must proceed through 28 U.S.C. § 2255, not 18 U.S.C. § 3582," as

[11] According to the United States Sentencing Commission, the average sentence in FY 2025 for individuals convicted of trafficking fentanyl in the Fourth Circuit was 88 months—68 months less than the sentence Burton received. U.S. Sent'g Comm'n, *Interactive Data Analyzer* (2025), available at https://ida.ussc.gov/analytics/saw.dll?Dashboard. In *Brown*, the difference between the defendant's sentence and the national average was approximately 200 months. 706 F. Supp. 3d at 522.

the former, not the latter, was "explicitly and historically designed" for "attack[ing] the validity" of the sentence).[12]

Additionally, by way of his supplement of December 23, 2025, Mr. Burton "now asserts a reduction in his drug offense based on the recent 2025 United States Sentencing Amendments, which became available retroactively on November 01, 2025."[13] (ECF No. 69 at p. 11.) Burton argues that as a result of these amendments, "his sentence would be lower today given the same set of circumstances." *Id.* Pursuant to U.S.S.G §2D1.1(a)(5), Mr. Burton's base offense level was calculated based on "the offense level specified in the Drug Quantity Table" set forth in U.S.S.G. § 2D1.1(c)(5). Mr. Burton fails to state, however, and the court cannot identify, any particular amendment to U.S.S.G. § 2D1.1(c)(5) or any other section which lowers the offense level for the range of fentanyl attributed to him.[14] Similarly, no particular amendment to U.S.S.G § 2K2.1 has lowered the offense level associated with possession of firearms by a prohibited person, applicable to Mr. Burton. For these reasons, no amendment to the Guidelines preceding or subsequent to Mr. Burton's sentencing presents an extraordinary and compelling reason for relief.

---

[12] In any case, the Guidelines were not miscalculated. Amendment 782 lowered the base offense level of an offense involving at least 400 grams but less than 1.2 kilograms of fentanyl from 32 to 30, and Mr. Burton properly received a base offense level of 30 for Count One. *See* U.S.S.G App. C Vol. IV, Amdt. 782 (2025) ("Section 2D1.1(c)(5) (as so redesignated) is amended by striking 'Level 32' and inserting 'Level 30.'").

[13] The court observes this claim is raised for the first time subsequent to the Government's Response of December 16, 2024. It is a general rule that a party "waive[s] [an] argument by raising it for the first time in its reply brief." *Clendening v. United States*, 19 F.4th 421, 430 n.7 (4th Cir. 2021) (quoting *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 602 n.13 (4th Cir. 2013).); *see also United States v. Sattar*, 467 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) (finding that where a defendant raised health conditions the first time in reply brief, he "waived his right to rely on these conditions as bases for his compassionate release"). The court nonetheless considers his argument; however, it does not persuade the court.

[14] U.S.S.G. § 2D1.1(c)(5) exists in the same form today as it did when Mr. Burton was sentenced in October 2022, assigning a base offense level of 30 for 400 grams but less than 1.2 kilograms of fentanyl. In fact, proposed amendments to the Sentencing Guidelines would raise, rather than lower, the base offense level for the range of fentanyl attributed to Mr. Burton. *See* Amendments to the Sentencing Guidelines, 91 Fed. Reg. 24088, 24095 (May 4, 2026) (proposing assigning a base offense level of 32 to offenses under Section 2D1.1(c)(5) involving "[a]t least 300 G but less than 1 KG of a Fentanyl-Related Substance").

***4. Family Circumstances***

In his latest supplement, Mr. Burton submits that his family circumstances warrant compassionate release. (ECF No. 69 at p. 17.) Mr. Burton states that his daughter "is contemplating suicidal thoughts and running away from home," "was expelled from school," and that her mother is "[f]acing homelessness . . . [and] has to work double-shifts to make ends meet." (ECF No. 69 at p. 17.)

Family circumstances of the defendant, like "death or incapacitation of the caregiver of the defendant's minor child," may constitute an extraordinary and compelling reason for relief consistent with the Guidelines' Policy Statement. *See United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932, at *2 (4th Cir. May 30, 2024) (quoting U.S.S.G. § 1B1.13(3)(A)). To constitute incapacitation, "courts have generally understood the term to require severe impairment of an individual's ability to perform the essential requirements of caring for a minor child." *Id*. "[W]here a caretaker is struggling to care for a child, but not incapacitated, courts have denied compassionate release." *Id.* (quoting *United States v. Edmond*, No. 5:17-cr-398, 2021 WL 1234509, at *2 (E.D.N.C. Apr. 1, 2021)). Here, the family circumstances described by Mr. Burton surely indicate significant struggle and hardship, which the court acknowledges, but they do not amount to incapacitation of the caregiver; the court does not find they present an extraordinary and compelling reason for relief.

***5. Rehabilitation***

Finally, standing alone, Mr. Burton's rehabilitation cannot demonstrate an extraordinary and compelling reason for relief. While rehabilitation of the defendant "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted," *see* U.S.S.G. § 1B1.13(d), rehabilitation on its own is not enough to qualify as an extraordinary and compelling reason. 28 U.S.C. § 994(t); *see also United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th

Cir. Jan. 13, 2022). In his latest supplement, Mr. Burton advises he has completed a wide variety of educational, therapeutic, family, and drug treatment programming. (ECF No. 69-2 at p. 2–6). The court commends Mr. Burton's achievements and efforts at rehabilitation, however, they do not demonstrate an extraordinary and compelling basis for relief. The cases Mr. Burton relies on in ECF No. 62 at p. 9–10 are plainly inapposite.[15]

Finding that Mr. Burton does not demonstrate extraordinary and compelling reasons for relief, the court need not reach the question of whether the 18 U.S.C. § 3553(a) sentencing factors support relief. *See Malone*, 57 F.4th at 173, *supra*.

## IV. CONCLUSION AND ORDER

Accordingly, for the foregoing reasons, it is this 16th day of October 2026,

**ORDERED** that the Motion (ECF No. 40) shall be, and is hereby, **DENIED**; and further it is

**ORDERED** that the Motion to Reconsider (ECF No. 50) shall be, and is hereby, **DENIED**.

Madam Clerk shall transmit a copy of this memorandum and order to Mr. Burton.

/S/

______________________________
Julie R. Rubin
United States District Judge

---

[15] The court in *Hall v. United States*, No. 2:93-cr-162(1), 2020 U.S. Dist. LEXIS 121742 at *19–20 (E.D. Vir. Mar. 2, 2020), considered the defendant's rehabilitation over a period of approximately 25 years. That case also involved significant changes to the federal sentencing scheme over decades. Additionally, the defendant in *Hall* was serving a life sentence for a drug offense. *Id.* at *7. Mr. Burton's reliance on *United States v. Rosso* is also misplaced, as the circumstances in that case—most notably the defendant's serious medical condition and the fact that he was serving a life sentence—differ significantly from those at issue here. No. 2:98-CR-20007-001, 2021 U.S. Dist. LEXIS 74288 at *3–5 (W.D. Ark. April 12, 2021). While rehabilitation and good behavior played a role in the courts' decisions to grant compassionate release in these cases, those defendants presented materially different circumstances than are present here.